IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ACADEMY OF ALLERGY & ASTHMA IN PRIMARY CARE, ET AL.<br><br>Plaintiffs,<br><br>v.<br><br>LOUISIANA HEALTH SERVICE AND INDEMNITY COMPANY, D/B/A BLUE CROSS AND BLUE SHIELD OF LOUISIANA, ET AL.<br><br>Defendants. | Civil Action No. 2:18-CV-00399-CJB-JCW<br><br><br><br>JURY TRIAL DEMANDED |

**MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL OF RECORD FOR ALLMED HEALTHCARE MANAGEMENT, INC. AND LOUISIANA HEALTH SERVICE AND INDEMNITY COMPANY**

Plaintiff United Biologics, LLC d/b/a United Allergy Services ("UAS"), respectfully submits this memorandum in support of its Motion to Disqualify Counsel of Record for AllMed Healthcare Management, Inc. ("AllMed") and Louisiana Health Service and Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana ("BCBSLA"). UAS hereby motions the Court to disqualify the law firm of Baker Donelson Bearman Caldwell & Berkowitz, PC ("Baker Donelson") and its associated attorneys from representing AllMed and BCBSLA in this matter, and states as follows:

**INTRODUCTION**

This motion to disqualify counsel is based upon Baker Donelson's current representation of two defendants, BCBSLA and AllMed, in direct conflict with that same firm's representation of its former client, Plaintiff UAS, in a substantially related, if not identical, matter. This case concerns efforts by BCBSLA and AllMed, along with the other defendants to force UAS and Academy of Allergy and Asthma in Primary Care ("AAAPC") members out of the business of

allergy testing and immunotherapy. Those efforts included making false medical board complaints, harassing physicians with audits and investigations, denying claims for reimbursement on an improper basis, fraudulently employing an "independent review," and otherwise targeting UAS and maligning its business practices.

Surprisingly, the firm that is now defending BCBSLA's and AllMed's conduct from UAS's claims is the same firm that represented UAS and AAAPC members in responding to those exact same actions. Baker Donelson and its current shareholders represented UAS and it contracting physicians in responding to BCBSLA's frivolous medical board complaints, as well as BCBSLA's audits, investigations, and claims denials. Baker Donelson appealed those claims directly to BCBSLA and AllMed, and sat across from BCBSLA while representing UAS in numerous meetings questioning BCBSLA's inappropriate conduct to both BCBSLA and various governmental agencies. Suffice it to say that Baker Donelson's former representation of UAS is substantially related, if not identical, to the subject matter of this case.

A lawyer may not represent a client on one matter and then turn around and represent that client's adversary in a substantially related matter. Doing so undermines the confidences of clients in the legal profession. Here, doing so puts UAS in the unique position of having its prior law firm criticize the work that same firm performed on UAS's behalf, with the potential of using UAS's confidential information against it. Yet ever since Baker Donelson appeared in this matter, it has rebuffed numerous attempts by UAS to resolve the disqualification issue and has failed to even return UAS's confidential information from its prior representation of UAS. UAS does not take this motion lightly, but has no choice but to present the matter to this Honorable Court given Baker Donelson's steadfast refusal to acknowledge this obvious conflict of interest.

For the reason set forth herein, the Court should disqualify Baker Donelson from its representation of BCBSLA and AllMed.

## BACKGROUND FACTS

UAS is a company that started in San Antonio, Texas in 2009. It provides the necessary economic and technical support for family physicians and pediatricians to perform allergy testing and immunotherapy. *See* Ex. A, Affidavit of Nicolas Hollis, former CEO of UAS. UAS contracts with primary care physicians and their practice groups in various states to assist them in performing allergy skin prick testing and allergen immunotherapy for the benefit of their patients. *See id*. ¶ 2. UAS has contracted with primary care physicians across the United States, and contracted with primary care practice groups and physicians in Louisiana beginning in January 2011. *See id*. This case concerns an alleged conspiracy formed years later among certain health insurance companies, including BCBSLA, to restrict competition in the market for allergy testing and immunotherapy by eliminating a class of competitors, including UAS and AAAPC members. *See* Dkt. No. 52.

**A.  UAS Previously Engaged Baker Donelson Concerning these Matters.**

The first indication to UAS of issues in the state of Louisiana occurred in the Winter of 2013 and early 2014, when numerous physicians in contract with UAS began reporting to UAS that they had received communications from the Louisiana State Board of Medical Examiners ("LSBME") about their provision of allergy testing and immunotherapy. *See* Ex. A ¶ 3. Around that time, those same physicians reported similar communications from BCBSLA. *See id*. To respond to these communications on behalf of UAS and the physicians and practice groups associated therewith, UAS engaged the law firm of Baker Donelson. *See id.* Specifically, Donna Fraiche, a partner at Baker Donelson, came highly recommended in terms of dealing with LSMBE and insurance companies and she agreed to represent UAS and the physicians in

3

contract with UAS regarding these issues. *See id*. UAS thus engaged Baker Donelson in December 2013 pursuant to a formal engagement agreement. *See* Ex. A-1.

In January 2014, following the execution of the engagement letter, UAS and its legal counsel, Baker Donelson, met with the LSBME to discuss an anonymous complaint about UAS and its protocol. *See* Ex. A ¶ 5. Baker Donelson's representation included not only meeting with LSBME representatives, but also reviewing UAS's confidential information to respond to questions that had been raised from an anonymous complainant, who turned out to be none other than BCBSLA. *See id*.

During this same time period, Baker Donelson acted on behalf of UAS in meeting with BCBSLA regarding its audits and investigations and in responding to similar questions. *See id*. ¶ 6. For example, Baker Donelson met with BCBSLA's Chief Medical Officer, Dr. Carmouche, on February 18, 2014 to advocate on behalf of UAS. *See id*. By April 29, 2014, Baker Donelson agreed to expand that representation to also include the appeals of claims BCBSLA had denied that UAS's contracted physicians had previously submitted for reimbursement. *See* Ex. A-2.

During Baker Donelson's representation of UAS and the physicians, Baker Donelson was entrusted with confidential information from both sets of clients, including information regarding the services being provided and the basis for contesting BCBSLA's spurious claims of lack of medical necessity. *See* Ex. A ¶ 7. UAS and certain primary care physicians engaged in routine confidential communications with Baker Donelson during the representation. *See id*. Mr. Hollis estimates having at least 500 emails between himself and Baker Donelson regarding these confidential and sensitive matters. *See id*. ¶ 11.

As laid out in the complaint in this case, both BCBSLA and AllMed are alleged to have acted tortiously and illegally in responding to the appeals for reimbursement filed by UAS,

including by agreeing beforehand that the appeals would be rejected under the guise of an independent review. *See* Dkt. No. 52 ¶¶ 61-67, 69, 78-80, 92-94. Following BCBSLA's and AllMed's denials, Baker Donelson, still acting on behalf of UAS and the physicians, reached out to the Louisiana Department of Insurance to complain about BCBSLA. *See* Ex. A ¶ 8. On July 28, 2014, Baker Donelson also appeared on UAS's behalf in a meeting UAS requested of the Commissioner of the Louisiana Department of Insurance, James Donelon. *See id*. Sitting across the table from Baker Donelson and UAS was BCBSLA, including Dr. Carmouche, its Executive Vice President and Chief Medical Officer and Dr. Dwight Brower, its Medical Director. *See id.*; Ex. A-3 at 1. BCBSLA was not represented by Baker Donelson, but by its own Senior In-house Counsel, Sheldon Faulk. *See id.*

The substance of that July 2014 meeting is central to this case. *See* Dkt. No. 52 at ¶¶ 101-02. At that meeting Dr. Brower claimed that BCBSLA's denials of claims were appropriate because they had never lost an independent review of those denials, but withheld BCBSLA's prior agreement with AllMed to send all appeals to that organization where the prior denials would then be upheld. *See* Ex. A ¶ 9. Dr. Brower concealed any agreement with AllMed and denied any agreement with outside allergist organizations. *See id.* Yet he admitted an agreement with other health insurance companies, including BCBSKS, another defendant in this action. *See id.*; Ex. A-3 at 6.

**B. BCBSLA Disrupted Baker Donelson's Representation.**

On or about October 1, 2014, during the course and scope of Baker Donelson's representation of UAS, Mr. Hollis learned from UAS's counsel that BCBSLA had demanded that Baker Donelson withdraw from its representation of UAS and its contracting physicians because Baker Donelson was representing BCBSLA in an unrelated matter. *See* Ex. A ¶ 12.

5

Just a few days earlier, Baker Donelson had communicated with the Department of Insurance about BCBSLA, including information concerning BCBSLA's discussions with Baker Donelson and how BCBSLA's actions were threatening UAS's ability to continue to operate in the state of Louisiana. *See id.* Following Baker Donelson's unexpected withdrawal, UAS and many primary care physicians in contract with UAS were left without representation in Louisiana regarding these matters. *See id.* ¶ 13. UAS was ultimately forced to withdraw from Louisiana in 2015 after virtually all of its physicians were forced to terminate their contracts with UAS because they were no longer being reimbursed for allergy testing and immunotherapy by both BCBSLA and Humana. *See id.*

Only recently did UAS learn that BCBSLA and Humana were coordinating their activities to cause UAS to withdraw from Louisiana and other markets, and those activities included the very matters for which Baker Donelson previously represented UAS and its contracting physicians. *See id.* ¶¶ 10 & 14. Plaintiffs, UAS and AAAPC, filed this action in January 2018 after discovering BCBSLA's conduct, including its collusion with the other defendants and their intentional manipulation of the LSBME process and the claims appeal process as part of their campaign to force UAS out of the state of Louisiana. *See id.* ¶ 15.

### C. BCBSLA and AllMed Retain Baker Donelson to Criticize its Own Work.

Despite being aware of Baker Donelson's representation of UAS concerning the underlying events in this case, BCBSLA and AllMed both retained that same law firm to represent them in this suit. Plaintiffs first became aware of this representation on February 26, 2018 when William Kaufman, UAS's counsel in this matter, was contacted by Baker Donelson to request an extension for BCBSLA to answer the complaint. *See* Ex. B. Learning that Baker Donelson had agreed to represent BCBSLA on the very issues in which that firm had represented

UAS and its contracting physicians was obviously concerning to UAS given the fact Baker Donelson was given unfettered access to UAS's confidential information and strategies regarding the events in dispute. *See* Ex. A ¶ 10. Baker Donelson used that information, *inter alia*, when it prepared for and represented UAS in the above described meetings with the LSBME and the Louisiana Department of Insurance, and also in its handling of claims denied by BCBSLA. *See id*.

Though UAS and the primary care physicians represented by Baker Donelson did not know the root cause at that time of the audits and claims denied by BCBSLA and the communications from the LSBME, UAS has recently learned through discovery in another federal antitrust action that these disputes were created by BCBSLA and other members of a conspiracy to eliminate UAS and the physicians in contract with UAS from various markets for allergy testing and allergen immunotherapy including in Louisiana. *See id*. As is discussed in Plaintiffs' First Amended Complaint, BCBSLA worked with other health insurance companies in an attempt to eliminate UAS and primary care physicians from the market for allergy testing and allergen immunotherapy. *See, e.g.*, Dkt. 52, ¶¶ 3, 12, 18, 30, 35, 112. Those efforts included false complaints to the LSBME, audits of physicians, claims denials, and manipulation of the claims appeal process—all of which related to Baker Donelson's representation of UAS and the primary care physicians associated therewith in 2013-2014. *See, e.g., id.* ¶¶ 57-60.

**D. Baker Donelson Repeatedly Refuses to Withdraw thereby Necessitating this Motion.**

After learning of Baker Donelson's prior representation, Mr. Kaufman contacted Baker Donelson's lead counsel of record, Craig Caesar, by phone and letter on March 8, 2018 to raise the issue to his attention. Ex. B ¶ 4; Ex. B-1. On March 26, 2018, Mr. Kaufman received a response from Sam Blair, Baker Donelson's General Counsel, claiming that no conflict existed

7

because Baker Donelson possessed no confidential information. Ex. B ¶ 5; Ex. B-2. On April 6, 2018, Mr. Kaufman followed up in a communication to Mr. Blair with further detail of the confidential information involved, requested return of UAS's client file, and explained that disqualification applied to substantially related matters. Ex. B ¶ 6.

Said communication went unanswered and on May 1, 2018, Mr. Kaufman followed up with a phone call and voicemail to Mr. Blair. Ex. B ¶ 7. When the phone call was not returned, Mr. Kaufman followed up with a May 3 letter via email to Mr. Blair, to which Mr. Blair responded with a phone call on May 4. Ex. B ¶ 8 and 9. In that phone call, Mr. Blair represented that Baker Donelson would look for the file, review the matter further, and respond. *Id.* On May 16, Mr. Kaufman called Mr. Blair again and left a message, to which he responded via email that he would call on May 21. Ex. B ¶ 10. Mr. Kaufman responded on May 18 via email welcoming a May 21 call and explaining the matter may require a motion to disqualify. Ex. B ¶ 11.

The May 21 teleconference never occurred. Ex. B ¶ 12. Instead, Baker Donelson acting on behalf of BCBSLA and AllMed, along with the other defendants, sought to stay discovery and any scheduling conference in this matter and to expedite that relief. Dkt. Nos. 50 & 51. And while the Court has disposed of those motions, Baker Donelson still has yet to confront the clear conflict that threatens its former client's confidences and trust in the judicial system. As a final attempt to resolve this conflict amicably, UAS provided a courtesy copy of this motion to Baker Donelson on May 25, requesting a response by the close of business on May 29. Ex. B ¶ 12. Given Baker Donelson's steadfast refusal to withdraw, UAS has little choice but to file this motion seeking disqualification.

## ARGUMENT

A lawyer has both a duty of confidentiality and a duty of loyalty to a former client. *In re American Airlines, Inc.*, 972 F.2d 605, 619 (5th Cir. 1992). "One of the foundations and most basic tenants of the attorney/client relationship is confidentiality," and "trust in the confidence with which an attorney receives potential evidence from a client would soon disappear if the lawyer were permitted to establish the same fiduciary relationship with an adverse party." *Walker v. State, Dep't of Transp. & Dev.*, 817 So.2d 57, 63 (La. 2002) (citation omitted). In this case, Baker Donelson has established the same fiduciary relationship with an adverse party to its former client, UAS, and this Honorable Court should therefore disqualify Baker Donelson. *See id*.

The remedy for a conflict of interest is disqualification of the firm with the conflict. *See id*. at 59-60. Motions to disqualify counsel are governed by state and national professional conduct standards adopted by the court. The standards relevant to a motion to disqualify include (1) the local rules of the district court, (2) the American Bar Association's Model Rules of Professional Conduct, and (3) the forum state's rules of attorney conduct. *See Conwill v. Greenberg Traurig, L.L.P.*, No. 09-4365, 2010 WL 11538418, at *1 (E.D. La. Dec. 23, 2010) (citation omitted). This District has adopted the Rules of Professional Conduct adopted by the Louisiana Supreme Court. Rules 1.9 and 1.10 are relevant to UAS's motion to disqualify Baker Donelson.

Louisiana Rule of Professional Conduct 1.9 provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

9

*See id*. (citing Rule 1.9, La. Rules of Prof. Conduct (eff. March 1, 2004)). Thus, this Court applies the "substantial relationship test" requiring proof of the following two elements:

> (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify; and
>
> (2) a substantial relationship between the subject matter of the former and present representations.

*See Sumpter v. Hungerford*, No. 12-717, 2013 WL 2181296, at *6 (E.D. La. May 20, 2013) (citing *American Airlines*, 972 F.2d at 614). "Inherent in the substantial relationship test is a fundamental concern with protecting the client's interest in the loyalty of his attorney…Once it is established that the prior matters are substantially related to the present case, the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation." *See id*. (citation omitted). Thus, if both elements from this test are met, "disqualification is the Court's only option." *See id*. (citing *American Airlines*, 972 F.2d at 614). Because Baker Donelson and UAS had an "actual attorney-client relationship" and a "substantial relationship between the subject matter of the former and present representations" exists, Baker Donelson must be disqualified as counsel for the defendants in this case. *See id*.

    **A. Baker Donelson and UAS had an Attorney-Client Relationship.**

To determine if an attorney-client relationship existed, the Supreme Court of Louisiana applies the test contained in the Restatement (Third) of the Law Governing Lawyers. *See Sumpter*, 2013 WL 2181296, at *7. According to the Restatement, an attorney-client relationship arises when a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person and the lawyer manifests to the person consent to do so. *See id.* In this case, Baker Donelson signed an engagement letter dated December 2, 2013 (the

"Engagement Letter") to begin Baker Donelson's representation of UAS and certain primary care physicians in contract with UAS. Baker Donelson continued to represent UAS and those primary care physicians until October 2014. *See* Exs. A-1; A-2. There is no question that UAS and Baker Donelson had an attorney-client relationship. *See id*.

### B. A Substantial Relationship Exists Between the Subject Matter of Baker Donelson's Prior Representation of UAS and the Current Litigation.

The Louisiana Supreme Court has held that "two matters are 'substantially related' when they are so interrelated both in fact and substance that a reasonable person would not be able to disassociate the two." *See Sumpter*, 2013 WL 2181296, at *8 (citing *Walker*, 817 So. 2d at 62). Courts "err on the side of protecting the confidences and expectation of loyalty of the former client" by resolving even "borderline cases" in favor of disqualification. *Tristem, Ltd. v. City of New Orleans*, No. 03-2882, 2003 WL 22852214, at *2 (E.D. La. Nov. 26, 2003) (citation omitted). This is far from a borderline case for disqualification.

UAS retained Baker Donelson to represent both UAS as well as certain physician members of AAAPC. Said representation included responding to communications from the LSBME and BCBSLA and the appeal of denied claims from BCBSLA. Plaintiffs detail these communications and matters in their First Amended Complaint. [Dkt. 52 ¶ 81, 92, 101] As is clear from the allegations, there is more than a substantial relationship between the former representation by Baker Donelson and the current litigation.

Plaintiffs' First Amended Complaint includes, for example, allegations of the following: (i) BCBSLA's in person-harassment of physicians in contract with UAS (Dkt. 52, ¶ 56); (ii) BCBSLA's attempts to manipulate the Louisiana State Board of Medical Examiners into making inquiries adverse to UAS (Dkt. 52, ¶¶ 57-60); (iii) BCBSLA's denial of claims using a fraudulent IRO process involving ALLMED concerning the exact same claims Baker Donelson appealed on

11

behalf of UAS (Dkt. 52, ¶¶ 61-67); and (iv) BCBSLA's representations to the Louisiana Department of Insurance in an adversarial proceeding involving UAS, the same meeting wherein Baker Donelson represented UAS against BCBSLA (*id.* ¶¶ 96-97, 101-102).  Baker Donelson represented Plaintiffs in these matters, attended meetings on behalf of UAS, provided confidential advice to both UAS and certain primary care physicians in contract with UAS—all to assist UAS and those physicians in their disputes with the very defendants Baker Donelson now represents in this action, namely BCBSLA and AllMed.  Such dual and conflicting representation is prohibited.  *See Sumpter*, 2013 WL 2181296, at \*6 ("disqualification is the Court's only option.") (citing *American Airlines*, 972 F.2d at 614).

Moreover, Baker Donelson's prior representation is "akin to the present action in a way reasonable persons would understand as important to the issues involved."  *American Airlines,* 972 F.2d at 618-19 (quoting *Corrugated Containing Antitrust Litig.,* 659 F.2d 1341, 1346 (5th Cir. 1981)).  A simple side-by-side comparison of the scope of the work performed by Baker Donelson in its former representation of UAS in dealing with BCBSLA versus its current representation of BCBSLA demonstrates the substantial relatedness of the action.

| **Prior Representation of UAS** | **Current Representation of BCBS & AllMed** |
|---|---|
| "Beginning in or around February 2014, UAS's contracting physicians began reporting to UAS that they were receiving claims denials from BCBS Louisiana for the allergy testing and immunotherapy services that were the subject of UAS's contracts with those physicians… Baker Donelson, as part of its representation of UAS and its contracting physicians, began corresponding with BCBS Louisiana, and participated in multiple meetings with that health insurance company on UAS's behalf including a meeting on February 18, 2014 including Donna Fraiche and David Carmouche, BCBS Louisiana's | "Consistent with this market push, UAS setout to force third party payors such as Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana ("BCBSLA"), to abandon their commitment to promote only proven medical methodologies and to reduce the enormous cost of health care by carefully and continually reviewing and analyzing medical treatments and procedures. By allowing reimbursement only for proven methodologies, BCBSLA actively discourages inefficient, unnecessary, untested and potentially dangerous medical treatments and procedures."<br><br>"[C]entral to Plaintiffs' crusade is their attempt to force third party payors like BCBSLA, |

| | |
|---|---|
| "Chief Medical Officer."  Ex. A ¶ 6 | BCBSKS and Humana to indiscriminately reimburse non-specialist physicians — who often have little or no knowledge of or experience with the practice of allergen immunotherapy — for providing or attempting to provide allergy therapies which have been determined to be ineffective, inefficient and potentially dangerous to their patients." Dkt. No. 40-1 at 1. |
| "During those appeals to BCBS Louisiana, which lasted until October 2014, both UAS and the contracting physicians trusted Baker Donelson with confidential information regarding the appeals, including information regarding the services being provided and the basis for contesting BCBS Louisiana's spurious claims of lack of medical necessity… During that time, BCBS Louisiana did not reveal that it did not randomly assign the appeals to the independent review organization that reviewed them, but that most appeals were intentionally routed to AllMed Healthcare Management, Inc. ("AllMed"), who upheld every denial."  Ex. A ¶ 7. | "[T]reatments proposed and championed by non-specialists simply do not meet requisite standards of medical safety and necessity." Dkt. No. 40-1 at 14.<br><br>"BCBSLA, and apparently other payors, realize that any short term financial benefit from having large numbers of under-schooled or ill-informed physicians perform allergy tests and provide immunological therapies to allergy sufferers would very likely result in much higher health care costs when ineffective or failed treatment results in more dramatic and more critical patient outcomes." Dkt. No. 40-1 at 2. |
| "Following BCBS Louisiana's wrongful denial of some of the claims for reimbursement, Baker Donelson reached out to the Louisiana Department of Insurance on UAS and the contracting physicians' behalf to complain about the conduct of BCBS Louisiana.  In July 2014, UAS, represented by Baker Donelson, met with the Commissioner of the Louisiana Department of Insurance, James Donelon, following failed attempts of communicating with BCBSLA regarding denied claims and audits of primary care physicians in contract with UAS."  Ex. A ¶ 8.<br><br>During the meeting with the Department of Insurance, Baker Donelson advocated on behalf of UAS that BCBSLA's claimed objections to payment "are competitor driven and that certain physicians have used unfounded complaints about safety and efficacy to convince Blue Cross Louisiana not to pay those physicians' competitors."  Ex. A-3 at 6. | "Unable to convince BCBSLA, and other payors, to abandon their resistance to promoting untested, inefficient and perhaps even dangerous therapies, UAS has turned to the courts to try and bully Board Certified allergists, third-party payors, and others to silence their objections to the indiscriminate practice of allergy testing and allergen immunotherapy." Dkt. 40, at 2.<br><br>"The *only* reason for BCBSLA to willingly pay a higher reimbursement rate than might otherwise available is that lower costs treatment is medically unnecessary, inefficacious, unproven, or even dangerous." Dkt. No. 40-1 at 13 n.9 (emphasis in original). |

13

"[A]ctual overlap in the subject matter of the representations need not exist in order for disqualification to be appropriate as long as a substantial relationship between the representations exists." *Conwill*, 2011 WL 121553, at *1. In this case, Baker Donelson's past and current representations do overlap, thereby creating a situation where Baker Donelson previously advocated on behalf of UAS and its contracting physicians in matters adverse to BCBSLA, which are the same matters for which Baker Donelson now represents BCBSLA and AllMed. *See id*. A reasonable person could readily determine that Baker Donelson's representation in this case is substantially related to and undermines its prior representation of UAS.

### C. Baker Donelson Must be Disqualified as Counsel for BCBSLA and AllMed.

As provided in detail above, if the Court finds the (1) an actual attorney-client relationship existed between UAS and Baker Donelson; and (2) the subject matter of that prior representation is substantially related to the representation of the defendants in this lawsuit, it must conclude that Baker Donelson and all associated attorneys are prohibited from representing the defendants in this lawsuit. Rule 1.10(a) of the Louisiana Rules of Professional Conduct imputes a lawyer's disqualification under Rule 1.9 to all the lawyers in the lawyer's law firm. *See Sumpter*, 2013 WL 2181296, at *6. This Honorable Court should, therefore, disqualify Baker Donelson and any attorneys associated therewith from representing Defendants BCBSLA and AllMed in this matter.

Further, disqualification is appropriate to protect the numerous confidences that were shared with Baker Donelson during the course of its representation of UAS and its contracting physicians, including their protocols, medical and business practices, details about the quality of their services, and strategies for responding to BCBSLA's complaints. *See, e.g.*, Ex. A ¶¶ 7, 10,

11.[1] UAS having actually shared such confidential information with Baker Donelson alone is sufficient, but not necessary for purposes of disqualification because "a lawyer who has given advice in a substantially related matter must be disqualified, whether or not he has gained confidences." *American Airlines, Inc.*, 972 F.2d at 614; *Sumpter*, 2013 WL 2181296, at *10. Because the matters substantially overlap and UAS's confidential information is at risk, the Court may disqualify the entire firm of Baker Donelson as Defendants' counsel on either ground. *See id*.

## PRAYER

For the foregoing reasons, Plaintiff United Biologics, LLC d/b/a United Allergy Services respectfully requests that this Honorable Court disqualify the law firm of Baker Donelson Bearman Caldwell & Berkowitz, PC from representing Defendants AllMed Healthcare Management, Inc. and Louisiana Health Service and Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana in this matter, and grant other such relief as the Court may deem appropriate.

---

[1] UAS is willing to tender further proof of sharing of confidential information with Baker Donelson for the Court's *in camera* inspection, if the Court so prefers. In such a situation, UAS would respectfully seek the Court's guidance as to the preferred procedure for supplying such information without waiving associated protections of confidentiality and privilege.

Respectfully submitted,

**OTTINGER HEBERT, L.L.C.**

By: /s/ J. Michael Fussell, Jr.

Patrick S. Ottinger
State Bar No. 08727
William H. L. Kaufman
State Bar No. 29929
J. Michael Fussell, Jr.
State Bar No. 29870
1313 West Pinhook Road (70503)
P. O. Drawer 52606
Lafayette, Louisiana 70505-2606
Telephone: (337) 232-2606
Facsimile: (337) 232-9867
psottinger@ohllc.com
whkaufman@ohllc.com
mfussell@ohllc.com

and

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

Casey Low
Texas Bar No. 24041363
Dillon J. Ferguson
State Bar No. 06911700
401 Congress Ave., Suite 1700
Austin, Texas 78701-4061
Phone: (512) 580-9600
Fax: (512) 580-9601
casey.low@pillsburylaw.com
Dillon.ferguson@pillsburylaw.com

Admitted *Pro Hac Vice*

**ATTORNEYS FOR PLAINTIFFS**

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ACADEMY OF ALLERGY & ASTHMA IN PRIMARY CARE AND UNITED BIOLOGICS, LLC D/B/A UNITED ALLERGY SERVICES,<br><br>    Plaintiffs,<br><br>v.<br><br>LOUISIANA HEALTH SERVICE AND INDEMNITY COMPANY, D/B/A BLUE CROSS AND BLUE SHIELD OF LOUISIANA, HUMANA, INC., BLUE CROSS AND BLUE SHIELD OF KANSAS, INC., ALLMED HEALTHCARE MANAGEMENT, INC.<br><br>    Defendants. | § § § § § § § § § § § § § § § § § | Civil Action No. 2:18-CV-00399-CJB-JCW |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 1st day of June, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system and a copy of the foregoing pleading will be electronically sent to all attorneys of record who receive notice by operation of the Court's CM/ECF system.

　　　　　　　　　　　　　　　　/s/  J. Michael Fussell
　　　　　　　　　　　　　　　　J. Michael Fussell