UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| ACADEMY OF ALLERGY & ASTHMA IN PRIMARY CARE, ET AL. | CIVIL ACTION |
|---|---|
| VERSUS | NO: 18-399 |
| LOUISIANA HEALTH SERVICE AND INDEMNITY COMPANY, ET AL. | SECTION: "J"(2) |

**ORDER**

Before the Court is a *Motion for Reconsideration* **(Rec. Doc. 199)** filed by Plaintiff United Biologics, LLC d/b/a United Allergy Services ("UAS"). UAS seeks reconsideration of the Court's order dismissing its claims under Section 1 of the Sherman Act because it was not a proper plaintiff and therefore lacked antitrust standing.[1] For the following reasons, the Court finds that the motion should be **GRANTED**.

The proper plaintiff inquiry considers "(1) whether the plaintiff's injuries or their causal link to the defendant are speculative, (2) whether other parties have been more directly harmed, and (3) whether allowing this plaintiff to sue would risk multiple lawsuits, duplicative recoveries, or complex damage apportionment." *McCormack v. Nat'l Collegiate Athletic Ass'n*, 845 F.2d 1338, 1341 (5th Cir. 1988) (citing *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 545 (1983)). This inquiry is not a "precise test" but provides a set of "factors

---

[1] (Rec. Doc. 195, at 11-13).

that circumscribe and guide the exercise of judgment in deciding whether the law affords a remedy in specific circumstances." *Associated Gen. Contractors*, 459 U.S. at 536-37.

In *Associated General Contractors*, two carpenters unions sued an association of general contractors and its members, alleging that they coerced landowners (customers or potential customers) and general contractors (either members of the association or their competitors) to enter into business relationships with nonunion firms to the detriment of certain unionized firms, thereby restraining the business activities of the unions. *Id.* at 520-21, 528. The Court first held that the plaintiffs' group boycott theory adequately alleged a restraint of trade. *Id.* at 527-28. Nevertheless, the Court held that the unions were not proper plaintiffs because their injuries were too indirect:

> According to the complaint, defendants applied coercion against certain landowners and other contracting parties in order to cause them to divert business from certain union contractors to nonunion contractors. As a result, the Union's complaint alleges, the Union suffered unspecified injuries in its "business activities." It is obvious that any such injuries were only an indirect result of whatever harm may have been suffered by "certain" construction contractors and subcontractors.

*Id.* at 540-41 (footnotes omitted). The Court explained that the proper plaintiffs would be the union contractors who lost revenue due to these efforts, as well as the landowners and general contractors who were pressured to move their business:

> If either these firms, or the immediate victims of coercion by defendants, have been injured by an antitrust violation, their injuries would be direct and . . . they would have a right to maintain their own treble damages actions against the defendants.

*Id.* at 541.

In the instant matter, UAS alleges that Defendants coerced physicians, including AAAPC members, to stop purchasing services from UAS by denying claims for UAS's services and threatening them with nonpayment, audits, reviews, and exclusion from their provider networks, resulting in many providers terminating their agreements with UAS.[2] UAS stands in the same position as the unionized firms in *Associated General Contractors* who lost business due to the defendants' efforts to coerce customers to switch to nonunion firms and therefore has antitrust standing because it was directly harmed by Defendants.

Further, the cases the Court previously relied upon are distinguishable and not applicable here. *Hughes v. Tobacco Institute, Inc.*, 278 F.3d 417, 423 (5th Cir. 2001), turned on application of the direct purchaser rule[3] announced in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745-46 (1977), which Defendants now concede is inapposite. (Rec. Doc. 208, at 6) ("This is not an indirect purchaser case . . . ."). Likewise, *Norris v. Hearst Trust*, 500 F.3d 454 (5th Cir. 2007), involved markedly different circumstances. There, the defendant, the owner of the *Houston Chronicle*, requested that the plaintiffs, its distributors, certify falsely inflated distribution numbers, which would lead to an increase in the defendant's advertising sales and revenue. *Id.* at 463-64. The plaintiffs refused to do so, so the defendant terminated them. *Id.* The court held that the plaintiffs had not suffered antitrust injury because they had not been injured by the anticompetitive aspects of the defendant's conduct,

---

[2] (Second Amended Complaint, Rec. Doc. 145, at 26-27, 33-34, 39, 46).
[3] "In *Illinois Brick*, this Court held that direct purchasers may sue antitrust violators, but also ruled that indirect purchasers may not sue." *Apple Inc. v. Pepper*, 139 S.Ct. 1514, 1519 (2019).

3

as the intended outcome of the defendant's scheme was to increase demand and prices for newspaper advertising in the Houston metropolitan area and the plaintiffs neither bought nor sold advertising in that market.[4] *Id.* at 466. Thus, they were also not proper plaintiffs because they were not "directly injured by the harm to competition caused or posed by the asserted antitrust violations." *Id.* Here, by contrast, Plaintiffs claim that Defendants pressured UAS's customers to cease doing business with it. This is a direct injury caused by an antitrust violation. *See Associated Gen. Contractors*, 459 U.S. at 541. Therefore, UAS is a proper plaintiff and has antitrust standing.

Accordingly,

**IT IS HEREBY ORDERED** that UAS's *Motion for Reconsideration* **(Rec. Doc. 199)** is **GRANTED**, and UAS's Sherman Act Section 1 claim is reinstated.

New Orleans, Louisiana, this 14th day of May, 2021.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[4] Regarding *Norris*, this Court has previously noted that "[t]he Fifth Circuit was not stating a bright-line rule for gauging the occurrence of an antitrust injury. While it is typically consumers and competitors who suffer as a result of calculated anticompetitive conduct," these are not the only parties who are capable of having antitrust standing. *Vaughn Med. Equip. Repair Serv., L.L.C. v. Jordan Reses Supply Co.*, No. 10-00124, 2010 WL 3488244, at *12 (E.D. La. Aug. 26, 2010).