UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


ACADEMY OF ALLERGY & ASTHMA                    CIVIL ACTION
IN PRIMARY CARE, ET AL.

VERSUS                                          No. 18-399

LOUISIANA HEALTH SERVICE AND                    SECTION: "J"(2)
INDEMNITY COMPANY, ET AL.


## ORDER & REASONS

Before the Court are two *Motions for Partial Summary Judgment* **(Rec. Docs. 212, 213)** filed by Defendants, Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana ("BCBSLA"), Humana, Inc. ("Humana"), and AllMed Healthcare Management, Inc ("AllMed") (collectively, "Defendants"); an opposition (Rec. Doc. 230) filed by Plaintiffs, Academy of Allergy & Asthma in Primary Care ("AAAPC") and United Biologics, LLC d/b/a United Allergy Services ("UAS") (collectively, "Plaintiffs"); and two replies (Rec. Docs. 240, 241) filed by Defendants.  Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that both motions for partial summary judgment should be granted in part.

## FACTS AND PROCEDURAL BACKGROUND

This suit arises out of an alleged conspiracy to restrict competition in a multi-state market for allergy testing and allergen immunotherapy (hereinafter "allergy care market").

1

In late 2013, UAS hired counsel to investigate BCBSLA's sudden denials of all allergy care claims by UAS-contracted physicians after years of paying for these services. (Rec. Doc. 57, at 2). During this earlier dispute, Plaintiffs appealed the denied claims to an alleged "independent reviewer" who upheld all of the denials as not medically necessary. (*Id.* at 3–4). Subsequently, during the corporate deposition of BCBSLA on June 7, 2016, Plaintiffs discovered that the appeals were actually routed to AllMed, who had an agreement with BCBSLA to uphold all denials as "medically unnecessary," instead of an independent reviewer. (*Id.*).

In addition to this alleged conspiracy between BCBSLA and AllMed, Plaintiffs allege that Humana threatened numerous physicians' offices across multiple states to terminate their contracts with UAS or discourage them from entering a contract with UAS. (Rec. Doc. 145, at 26). By 2015, Plaintiffs allege that they were forced to withdraw from Louisiana due to Defendants' tampering with business relationships and denying coverage of their claims. (*Id.* at 7).

Plaintiffs initially filed suit in this Court on January 12, 2018. After two subsequent amendments, the Second Amended Complaint (Rec. Doc. 145), filed on January 17, 2019, became the operative complaint. Now, all Defendants move for partial summary judgment on Count Three ("the tortious interference claim"), and BCBSLA and AllMed move for partial summary judgment on Count Four ("the fraud claim"),[1] arguing that both claims are time-barred.

---

[1] Plaintiffs brought the fraud claim only against BCBSLA and AllMed, not Blue Cross Blue Shield Kansas or Humana. (Rec. Doc. 267, at 31).

## PARTIES' ARGUMENTS

First, as to the tortious interference with existing contracts claim, UAS alleges that Humana intentionally encouraged physicians to terminate existing contracts with UAS.[2] UAS cites twenty-one contracts that Humana allegedly interfered with. (Rec. Doc. 267, at 39–40).[3] These contracts allegedly relate to physicians throughout several states including Kansas, Kentucky, Arkansas, and Texas. *See generally* (Rec. Doc. 230).

Humana argues that Texas law, which has a two-year statute of limitations, applies to the tortious interference claim. (Rec. Doc. 213-1, at 5). Under Texas law, because UAS knew of the alleged injury as early as 2014, or not later than 2015, Humana contends that all of the contracts were time barred when this suit was filed on January 12, 2018. (*Id.* at 7). In opposition, UAS contends that the Court should apply the law of the state of each tortiously interfered contract, including each state's respective statute of limitations. (Rec. Doc. 230, at 16).

Second, as to the fraud claim, Plaintiffs' allegation centers on BCBSLA and AllMed's alleged policy to blanket deny claims by UAS-contracted physicians. (Rec. Doc. 145, at 65–66). The claim alleges that BCBSLA intentionally misinformed Plaintiffs that there was an independent review system, when, in fact, there was an

---

[2] Although UAS initially brought this claim against all Defendants, UAS acknowledges the tortious interference claim against BCBSLA and AllMed should be dismissed because those contracts took place within Louisiana, which would subject them to the Louisiana one-year prescriptive period. (Rec. Doc. 267, at 35, 39, 48). For purposes of this motion, the only Defendant considered is Humana. (*Id.*)

[3] Plaintiffs originally alleged that Defendants tortiously interfered with sixty-nine contracts (Rec. Doc. 213-1, at 1, 12–14). However, at oral argument, Plaintiffs conceded that there were only twenty-one contracts at issue. (Rec. Doc. 267, at 39–40). "[I]t's fair to concede that while there was tortious interference with other contracts, that under that state's law, such as Louisiana, it's too late." (*Id.* at 40).

agreement with AllMed to conduct the reviews and uniformly uphold the denials as "not medically necessary." (*Id.*).

Defendants maintain that Louisiana's one-year prescriptive period applies. (Rec. Doc. 212-1, at 11–12). They argue that Plaintiffs had discovered all necessary facts not later than the corporate deposition of BCBSLA on June 7, 2016, and thus, the fraud claim was untimely as of the January 12, 2018 filing date. (*Id.* at 3). In opposition, Plaintiffs argue that Texas's four-year statute of limitations should apply because one of the Plaintiffs, UAS, is domiciled in Texas. (Rec. Doc. 230, at 29). Under Texas law, the fraud claim would be timely.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be

satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

These motions turn on the same over-arching issue: choice of law. To begin, a federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state. *Abbasid, Inc. v. Bank of Am., N.A.*, 463 F. App'x 317, 318 (5th Cir. 2012). Accordingly, this Court applies Louisiana's choice of law rules. For each of counts three and four, two choice of law questions are before the Court: (1) which state's (or states') law applies to the merits of each count; and (2) which state's (or states') law applies to the prescriptive period of each count.[4]

First, in determining which state's law applies to the merits of each count, Louisiana Civil Code article 3542 governs the analysis. Article 3542 sets forth the

---

[4] In Louisiana, the terms "liberative prescription" and "prescriptive period" are used instead of "statute of limitations." The Court will use the Louisiana terms when referencing Louisiana and use statute of limitations when referencing other states.

general choice-of-law analysis for tort claims. Under Louisiana law, tort suits are "governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code art. 3542. In other words, courts apply the law of the state that would bear the most serious consequences legally, socially, and economically if not applied. *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 488 (5th Cir. 2001). To make this determination, the Court must:

> (1) examine the pertinent contacts of each state with respect to "the particular issue as to which there exists an actual conflict of laws" (so as to determine the "relationship of each state to the parties and the dispute"),
>
> (2) identify the various state policies that might be implicated in the choice of law, and then
>
> (3) evaluate the "strength and pertinence" of these policies in light of "the relationship of each state to the parties and the dispute," and in light of "the policies and needs of the interstate and international systems" (so as to resolve the ultimate question of which state's policies would be "most seriously impaired if its law were not applied to that issue").

*Id.* at 487 (formatting added) (citing La. Civ. Code arts. 3542, 3515) ("[W]e must apply the general choice of law rules applicable to tort claims, which are set forth in article 3542 . . . Article 3515, in turn, is the 'general and residual rule' that guides and informs Louisiana's approach to choice of law and is closely paralleled by article 3542.").

The Court must first examine the pertinent contacts of each state to the parties and the events giving rise to the dispute. *See* La. Civ. Code art. 3542. These contacts include (1) the place of conduct and injury; (2) the domicile, habitual residence, or place of business of the parties; (3) and the state in which the relationship, *if any*,

between the parties was centered. *Marchesani*, 269 F.3d at 487. Next, the Court will identify the pertinent policies. Articles 3515 and 3542, taken together, enumerate six policies that must be considered in the choice of law analysis with respect to tort claims: (1) upholding the justified expectations of parties; (2) minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state; (3) deterring wrongful conduct; (4) repairing the consequences of injurious acts; (5) discouragement of forum shopping; and (6) interstate uniformity of result. *Id.* at 487–88. Once the policies have been identified, the Court will evaluate the policies' strength and pertinence. *Id.* at 488.

The Fifth Circuit emphasizes that under Louisiana's choice of law rules, the ultimate question is not which state has the most significant interest in the dispute, but rather which states' *policies* would be *most seriously impaired* if its laws were not applied to the issue, *i.e.* the "state which, in light of its relationship to the parties and the dispute and its policies rendered pertinent by that relationship, would bear the most serious legal, social, economic, and other consequences if its law were not applied." *Id.* (quoting La. Civ. Code art. 3515, Revision Comment (b)). Notably, "[t]he 'involved states' include ex hypothesi the forum state, as well as any other state having pertinent contacts with the parties or the dispute." La. Civ. Code art. 3515, Revision Comment (c).

Next, after the state's law that applies to the merits has been determined, the Court's analysis continues to the choice of law analysis for liberative prescription. Regardless of which state's law applies to the merits of the claims, courts sitting in

Louisiana are generally required to apply Louisiana's prescription law. La. Civ. Code art. 3549. There are two exceptions to this general rule, though, when another state's law applies to the merits of the case:

> Exception One: If the action is barred under [Louisiana law], the action shall be dismissed unless it would not be barred in the state whose law would be applicable to the merits and maintenance of the action in [Louisiana] is warranted by compelling considerations of remedial justice.

> Exception Two: If the action is not barred under [Louisiana law], the action shall be maintained unless it would be barred in the state whose law would be applicable to the merits and maintenance of the action in [Louisiana] is not warranted by [Louisiana's policies] and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice.

La. Civ. Code art. 3549(B) (formatting added). The Court will now apply these choice of law analyses to Count Three, Tortious Interference with Contracts, and Count Four, Fraud.

## I.   THE TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS CLAIM

### A. Choice of Law Governing the Merits

The Court will begin by evaluating the pertinent contacts of UAS and Humana. "The relationship to the dispute may consist of any factual or legal connection to the events or the transaction giving rise to the dispute or to its subject matter." La. Civ. Code art. 3515, Revision Comment (c).

Here, the domiciles of the parties are not determinative. UAS is a Delaware corporation with a principal place of business in Texas, and Humana is a Delaware corporation with a principal place of business in Kentucky. Next, arguably, there is no single state where the conduct took place because UAS alleges that Humana

8

engaged in a "far-flung" conspiracy across nineteen states, including Louisiana and Kansas. (Rec. Doc. 230, at 8). Moreover, UAS argues that the place of injury is each state in which (1) the physician and UAS contracted, only to be denied reimbursement and (2) patients were therefore denied care. (*Id*. at 13). Humana contends, however, that the place of injury is Texas. (Rec. Doc. 267, at 16, 26). Specifically, Humana asserts that the alleged "injury to UAS, the loss of revenue from having these contracts terminated, the expense of additional resources to try and maintain these contractual relationships, . . . was borne by [UAS] in Texas." (*Id*. at 26). Moreover, Humana avers that UAS is located in Texas and all of their provider contracts had a Texas choice of law provision. (*Id*. at 16). Thus, the place of injury as to UAS was Texas, but the place of injury to the physicians and patients were in each state in which UAS contracted. Notably, because "the evaluation of factual contacts should be qualitative rather than quantitative," La. Civ. Code art. 3542, Revision Comment (a), the Court finds that Texas and the states in which UAS contracted with physicians have equal pertinent contacts. Therefore, the Court will next evaluate the above stated policies' strength and pertinence.

The first policy is upholding the justified expectations of parties. The court looks to where each party "should have had[] reason to anticipate the application of the law of a certain state." La. Civ. Code art. 3515, Revision Comment (c); *see also Marchesani*, 269 F.3d at 488 ("[A] Louisiana corporation engaged in manufacturing products in Louisiana should not be surprised at being subjected to Louisiana's product liability law; for that matter, Tennessee citizens injured in Tennessee have

no reason to expect that any law other than that of Tennessee will govern their claims."). Here, Humana, as a national health insurer, should not be surprised at being subjected to the laws of the states in which it does business. Moreover, UAS, as a company that provides technician and support services for physicians within Kansas, Louisiana, and twenty-four (24) other states should not be surprised at being subjected to the laws of the states in which it does business. Alternatively, because Humana is a national health insurer, it should not be surprised at being subjected to Texas state law, and UAS, having its principal place of business in Texas, should not be surprised at being subjected to Texas state law either.

Next, in minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state, the Fifth Circuit has noted that it should not "be overly concerned . . . with minimizing the adverse consequences that might flow from subjecting a party to the law of more than one state when the party in question is a manufacturer who, presumably, sells products across the United States . . ." *Marchesani*, 269 F.3d at 488. Like the manufacturer in *Marchesani* who sold products all across the United States, Humana offers health insurance policies all across the United States.

Next, in *Marchesani v. Pellerin-Milnor Corporation*, the Fifth Circuit looked at the third and fourth factors – deterring wrongful conduct and repairing the consequences of injurious acts – in tandem to determine which state's policies of deterrence and compensation would be most seriously impaired if its laws were not applied in the instant case. 269 F.3d at 489. Therefore, this Court will do the same.

10

Plaintiff argues that the consequences are borne not just by UAS, but by (1) the patients suffering from allergies who cannot obtain meaningful treatment; (2) the local physicians whose practices were threatened; and (3) UAS's employees and presence in those practices. (Rec. Doc. 230, at 17). Specifically, UAS contends that lack of access in less populated areas to health care generally, and specialists, such as board-certified allergists, specifically, is the greatest threat to health care. (*Id*.). States strike their own balance on the need for rural health care versus the need for specialists, UAS asserts, and states with a more rural, underserved population might make a different choice than highly urbanized states. (*Id*. at 12). UAS avers that these are crucial policy decisions regarding the extent to which state tort law should protect market disrupters, like UAS, who attempt to reach underserved patient populations. (*Id*.). "A legislative policy that is strongly espoused by the enacting state for intrastate cases may in fact be attenuated in a particular multistate case that has only minimal contacts with that state." La. Civ. Code art. 3515, Revision Comment (c). However, UAS does not point to any specific state's policy regarding the "critical" equitable allocation of health-care resources, and instead opines on the importance of rural healthcare (which this Court does not dispute) without citation or support to a single state's policy. Last, Texas has a policy interest to provide remedies for damages occurring to its citizens in Texas as well, and therefore has an interest in applying Texas law to UAS's claim as UAS has its principal place of business in Texas.

Next, in regard to the forum shopping policy, it is clear that forum shopping was not UAS's goal in filing in the Eastern District of Louisiana. At a hearing on the

11

instant motions, UAS stated, "[w]e're not asserting [the tortious interference claims] anymore against Blue Cross Blue Shield Louisiana because we recognize that the Louisiana prescriptive statute where those contracts were going to be performed is a year." (Rec. Doc. 267, at 35). UAS's chosen venue of Louisiana has a more restrictive, one-year prescriptive period in comparison to the other states at issue, such as, Texas, which has a two-year statute of limitations.

Finally, regarding the interstate uniformity of result policy, the majority of states have comparable tortious interference with contract laws. *See, e.g.*, *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1079 (W.D. Ky. 1995) (setting forth the elements essential to recovery for tortious interference with a contract in Kentucky)[5]; *Reebles, Inc. v. Bank of Am., N.A.*, 25 P.3d 871, 875 (Kan. Ct. App. 2001) (setting forth the elements essential to recovery for tortious interference with a contract in Kansas)[6]; *Skalla v. Canepari*, 430 S.W.3d 72, 80–81 (Ark. 2013) (setting forth the elements essential to recovery for tortious interference with a contract in Arkansas)[7]; *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 588 (Tex. 2017) (setting forth the

---

[5] Plaintiff must prove the following elements: (1) the existence of a contract; (2) Defendants' knowledge of this contract; (3) that it intended to cause its breach; (4) its conduct caused the breach; (5) this breach resulted in damages to CMI; and (6) Defendant had no privilege or justification to excuse its conduct.

[6] The elements essential to recovery for tortious interference with a contract are: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom.

[7] To prove tortious interference under Arkansas law, a plaintiff must prove the following elements: (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

elements essential to recovery for tortious interference with a contract in Texas)[8]. The critical differences involve the statutes of limitations for each state's tortious interference law. Humana argues that Texas tortious interference law applies, and thus its two-year statute of limitations does as well. (Rec. Doc. 213-1, at 6) (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a)). In opposition, UAS contends that the tortious interference law of the states in which the physicians and patients suffered harm, such as Kansas, Arkansas, and Kentucky, apply to the tortious interference claim, and thus, the respective statute of limitation for each state applies. (Rec. Doc. 230, at 16). Notably, like Texas, Kansas has a two-year statute of limitations, *see* Kan. Stat. Ann. § 50-513(a), whereas in Arkansas the statute of limitation is three years, Ark. Code Ann. § 16-56-105, and in Kentucky the statute of limitations is five years, Ky. Rev. Stat. Ann. § 413.120.

The issue with both Plaintiff and Defendant's arguments is that Louisiana has a separate choice of law analysis for determining which prescriptive period applies. The choice of law analysis currently at issue is solely centered on the merits of the claim, not the prescriptive period. While it appears that Texas and the states of the physicians and patients have equal pertinent contact and policy interests in having their state's law apply, the Court finds it notable that only UAS is a plaintiff in this suit. Although the Court recognizes that the harm that may be felt by the physicians

---

[8] A claim for tortious interference with a contract consists of four elements: (1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) the willful and intentional interference caused damage; and (4) actual damage or loss occurred.

and patients, and the Court does not discount that, UAS is the plaintiff in this case. UAS contracted with the physicians from Texas. UAS made payments from Texas. UAS felt the alleged economic damage in Texas. And finally, UAS included Texas choice of law provisions in each of these provider contracts. Therefore, the Court finds that Texas' tortious interference with contract law applies to the merits.

### B. Choice of Law Governing Prescription

The Court's analysis, however, does not stop at the general choice of law analysis under article 3542. In order to determine whether the tortious interference claim is timely, the Court employs the factors outlined in article 3549, which sets forth the choice of law rules governing liberative prescription.

Here, even though Texas law applies to the merits of the tortious interference claim, as determined above, the default rule requires application of Louisiana's one-year prescriptive period unless the facts warrant an exception. *See* La. Civ. Code art. 3549(B). To determine whether either exception applies, the Court must first see which contracts would be time barred under Louisiana's one-year prescriptive period.

Because an action for tortious interference with an existing contract is delictual, the applicable prescriptive period is one year, and "[t]his prescription commences to run from the day the injury or damage is sustained." La. Civ. Code art. 3492; *Caldwell Wholesale Co., LLC v. R.J. Reynolds Tobacco Co.*, No. 17-0200, 2018 WL 2209165, at *8 (W.D. La. May 11, 2018). Louisiana courts maintain that prescription on the tort claim begins to run "on the date the injured party discovers or should have discovered the facts upon which its cause of action is based." *Griffen*

*v. Kinberger*, 507 So. 2d 821, 823 (La. 1987). Therefore, prescription commenced on the date that UAS discovered, or should have discovered, the facts upon which its tortious interference claims are based. Because this suit was filed on January 12, 2018, if UAS discovered facts upon which its tortious interference claims are based prior to January 12, 2017, its claims are time barred.

Humana argues that UAS was on sufficient notice to start the statute of limitations beginning no later than February 2014 when UAS received reports of wholesale denials of UAS-contracted physician claims. (Rec. Doc. 213-1, at 6). Moreover, UAS states that BCBSLA told UAS and the Louisiana Department of Insurance in July of 2014, Humana contends, that BCBSLA and BCBSKS were coordinating denials of allergy testing and immunotherapy claims based on the UAS protocol. (*Id.* at 7). Finally, Humana asserts that by the end of 2015, at the latest, UAS knew or should have known of the alleged injury because UAS states that its Louisiana provider contracts were terminated by the end of 2015 when BCBSLA and Humana stopped reimbursing physicians for allergy testing and immunotherapy treatments based on the UAS protocol. (*Id.*). Thus, Humana avers that when this suit was filed in January 2018, all of the contracts at issue were time barred under Texas law because UAS allegedly discovered the requisite facts as early as 2014 but no later than 2015. (*Id.*).

In opposition, UAS contends that the Court should apply the statute of limitations law of the state of each tortiously interfered contract. (Rec. Doc. 230, at 16). In the alternative, UAS argues that, even if Texas law applies, not all of the

contracts are time barred. (Rec. Doc. 230, at 26). UAS avers that Humana interfered with numerous contracts within the two-year statute of limitations period prior to January 12, 2018. (*Id.*). UAS cites to an email thread from 2016 and a Humana Special Investigations Unit Summary and Recommendation in which Humana allegedly admits that it was wrong to deny UAS related claims and contemplates going back to pay them or adopting the other Defendants' denials as "not medically necessary" going forward in March 2016. (*Id.*); (Rec. Doc. 230-14); (Rec. Doc. 230-15). UAS argues that each time Humana tortiously interfered with a new contract, the injury to that contract became actionable at that time. (Rec. Doc. 230-1, at 27). Notably, UAS's argument slightly misses the mark because the pertinent question for prescription is not when the injury was caused, but when the plaintiff discovered or should have discovered the facts upon which the cause of action is based.

Although UAS knew that Defendants were coordinating denials of allergy testing as early as February 2014 when UAS received reports of wholesale denials of claims, Humana does not submit evidence that UAS's knowledge of these wholesale denials would cause all of their provider contracts to be terminated. Each individual contract has a separate prescriptive period commencing when UAS knew or should have known that Humana was tortiously interfering with that specific contract. Neither side alleges when UAS discovered that each contract was being interfered with, so the Court will assume that when each respective contract was terminated, UAS was put on notice. This notice of termination in conjunction with UAS's prior knowledge gained in 2014 was sufficient for UAS to discover that the terminated

contract had been tortiously interfered with. Therefore, under Louisiana law, any contract that terminated after January 12, 2017 is timely.

For the remaining contracts not timely under Louisiana law, Exception One may apply. Exception One requires the Court to dismiss the time barred claim unless (1) it would not be barred in Texas and (2) maintenance is warranted by compelling considerations of remedial justice. Under Texas law, the statute of limitations for a claim for tortious interference with an existing contract is two years. Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). The limitations period starts to run when the plaintiff knows of the nature of the injury and the damages, regardless of whether the contract is terminated at that time. *See Exxon Mobil Corp.*, 520 S.W.3d at 592. The commencement of the statute of limitations under Texas law is comparable to that under Louisiana law so the Court will once again look at the termination date of the contracts. Thus, the contracts that terminated before January 12, 2016 are time barred under Texas law.

The second step of the Exception One test is analyzing whether the contracts that are timely under Texas law but not under Louisiana law may be heard because maintenance of the action in Louisiana is warranted by compelling considerations of remedial justice. The Louisiana Civil Code provides that a compelling consideration exists when "suit in the alternative forum, although not impossible would be extremely inconvenient for the parties.'" La. Civ. Code art. 3549, Revision Comment (f) (citing Restatement (Second) of Conflict of Laws, 1986 Revisions, § 142, Comment (f) (Supp. March 31, 1987)). UAS could theoretically have brought suit in individual

state courts around the country for each tortiously interfered with contract. However, it chose to bring the claims in an omnibus complaint in this Court for the purposes of judicial economy and efficiency. Although it would not be impossible to bring suit for each complained of incident, it would have been extremely inconvenient for both the courts and the parties. This constitutes a compelling consideration of remedial justice, and because these contracts would not be dismissed under Texas law, they can be maintained in this Court pursuant to Exception One.

Next, for the contracts timely brought within Louisiana's one-year prescriptive period, Exception Two may apply, which provides that claims arising from these contracts should be maintained unless (1) it would be barred under Texas law and (2) maintenance is not warranted by Louisiana's policies and its relationship to the parties or dispute, nor by any compelling considerations of remedial justice. Because the suits arising from these five contracts would have been timely brought under Texas's two-year statute of limitations, the Court can hear claims arising from these contracts.

In sum, any claim for tortious interference with existing contracts that arises out of the contracts that terminated before January 12, 2016 must be dismissed. However, any claim for tortious interference with existing contracts that arises out of the contracts terminated after January 12, 2016 may be maintained.

II.    THE FRAUD CLAIM

A. Choice of Law Governing Merits of Claim

The Court will once again begin by analyzing the pertinent contacts of the parties to determine which state's law will apply to the merits of the fraud claim. The parties involved in the fraud claim are AAAPC, UAS, BCBSLA, and AllMed.

Here, the parties' domiciles do not weigh in favor of a particular state's law because the parties have several, disparate principal places of business and states of incorporation. Indeed, AAAPC is a Wisconsin company with a principal place of business in Washington D.C.; UAS is a Delaware company with a principal place of business in Texas; BCBSLA is a Louisiana corporation with a principal place of business in Louisiana; and AllMed is an Oregon corporation with a principal place of business in Oregon.

Next, the Court will look at the state of the conduct and injury. Plaintiffs contend that they were forced to exit the Louisiana allergy care market as a result of BCBSLA and AllMed's fraud conspiracy, misrepresentations, and unwarranted denials. (Rec. Doc. 145, at 65–66). Plaintiffs allege that the misrepresentations also included BCBSLA telling UAS and the Louisiana Department of Insurance that all of the claims BCBSLA had denied on the basis of medical necessity were upheld on independent review. (*Id.*). However, UAS is domiciled in Texas; coordinated its response to the faux "independent" reviews from Texas; incurred expenses through its employees located in Texas; and ultimately suffered economic harm in Texas. (Rec. Doc. 230, at 28); (Rec. Doc. 267, at 38). Moreover, the fraudulent reviews by AllMed

were conducted in Oregon where AllMed is based. (Rec. Doc. 230, at 28). Importantly though, the alleged statements by BCBSLA before the Louisiana Insurance Commissioner form the basis of Plaintiffs' fraud claim. (Rec. Doc. 145, at 65). These alleged statements were made to a Louisiana official in Louisiana and caused harm to Louisiana physicians and patients.  Therefore, the pertinent contacts of the parties favor application of Louisiana law to the merits of the fraud claim.

### B. Choice of Law Governing Prescription

Next, the Court turns its attention to the applicable prescriptive period for the fraud claim. Notably, neither Plaintiffs nor Defendants contest that Plaintiffs learned all necessary facts upon which their fraud claim is based at the deposition of BCBSLA on June 7, 2016. (Rec. Doc. 230, at 27–29). Therefore, the only question is which state's prescriptive period apples. When the substantive law of Louisiana applies to the merits of the case, Louisiana prescription law applies as well. La. Civ. Code. Art. 3549(A). In Louisiana, fraud has a one-year statute of limitations and "the prescriptive period begins to run on the date the injured party discovers or should have discovered the facts upon which his cause of action is based." *Chevron USA, Inc. v. Aker Mar. Inc.*, 604 F.3d 888, 894 (5th Cir. 2010). Thus, the one-year prescriptive period commenced on June 6, 2016 at BCBSLA's deposition and lapsed on June 7, 2017. This renders the fraud claim filed on January 12, 2018 untimely. As a result, the fraud claim is time-barred, and summary judgment is appropriate.

## <u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that the motion for partial summary judgment as to the fraud claim **(Rec. Doc. 212)** is **GRANTED.**

**IT IS FURTHER ORDERED** that the motion for partial summary judgment as to the tortious interference claim **(Rec. Doc. 213)** is **GRANTED in part.** Tortious interference with existing contracts claims that involve contracts with a termination date prior to January 12, 2016 are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that the Court retains jurisdiction over tortious interference with existing contracts claims that involve contracts with a termination date after January 12, 2016.

New Orleans, Louisiana, this 25th day of April, 2022.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE